## UNITED STATES DISTRICT COURT

## DISTRICT OF SOUTH DAKOTA

## CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | 3:19-CR-30018-RAL |
| Plaintiff, | |
| vs. | REPORT AND RECOMMENDATION FOR DISPOSITION OF MOTION TO SUPPRESS EVIDENCE |
| JASON FARLEE, | |
| Defendant. | |

Jason Farlee is charged with being a prohibited person (drug user or addict) in possession of firearms.  He seeks to suppress, on Fourth Amendment and Exclusionary Rule grounds, evidence acquired from him and his vehicle following, and as a result of, a traffic stop.  Because the stop and ensuing search and seizure of the evidence were reasonable and consonant with applicable law, the Court recommends that the suppression motion be denied.

### BACKGROUND

Around noon on October 8, 2018, Ramon Marrufo, a sergeant with the Cheyenne River Sioux Tribe Law Enforcement Services (CRSTLES), was on patrol in Eagle Butte, South Dakota, when he observed a dark colored pickup truck traveling northbound near Main Street.  Sergeant Marrufo had prior knowledge that Farlee owned the truck

and requested a warrant check on him. The dispatcher informed the officer that Farlee had an active tribal arrest warrant.

Sergeant Marrufo caught up to the pickup and noticed that its rear license plate was covered with mud. He then activated his emergency lights and stopped the vehicle.

Approaching it on foot from behind, Sergeant Marrufo made contact with the driver, who he identified as Farlee. The officer asked Farlee to have a seat in the patrol car. As they walked together toward the car, Sergeant Marrufo inquired whether there was anything in the pickup he should be concerned about. Farlee said, "There's guns in there."[1] When queried, Farlee gave the officer permission to search the truck.

Sergeant Marrufo then placed Farlee in the back "cage" of the patrol car, returned to the truck, and spoke with the front passenger, Brittany In The Woods. During his conversation with her, the officer observed a rifle on the floorboard next to In The Woods and requested that she and the young child (who was also in the vehicle) step out of the pickup. They both complied.

Minutes later, CRSTLES Sergeant Jeremy Reede and Officer Cody Norman arrived at the scene. Sergeant Marrufo briefed Sergeant Reede on the obstructed license place infraction. While Sergeant Reede was issuing Farlee a citation for the infraction, Sergeant Marrufo deployed his drug detection dog, K-9 Iwan, around the exterior of the

---

[1]Mot. Hrg. Tr. 21 (Oct. 28, 2019); Mot. Hrg. Ex. B at 5 (Oct. 28, 2019).

pickup. K-9 Iwan alerted to the odor of a narcotic coming from inside the vehicle. Based on the alert, Sergeants Marrufo, and Reede and Officer Norman searched the interior of the truck and seized three rifles and a pistol.

They also located a locked safe perched on a back seat of the pickup. Officer Norman found the key to the safe on a chain which had one of the keys to it still in the ignition. He opened the safe and inside were a small digital scale, two glass pipes, and clear plastic baggies. He noticed a white powdery residue on the table of the scale and tested it. The test yielded a presumptively positive result for methamphetamine.

At first, Farlee denied the safe belonged to him. After In The Woods was arrested, Farlee declared that the safe was his. He refused though to provide evidence of drug use in the form of a blood or urine sample.

Farlee was eventually arrested on the warrant and for unlawfully possessing a controlled substance, drug paraphernalia, and weapons. Sergeant Marrufo transported Farlee to jail and a tow truck came and hauled the pickup away.

That same evening, Sergeant Reede applied for and obtained a tribal search warrant for Farlee's blood premised on K-9 Iwan's alert, the guns and drug paraphernalia in the truck and safe, and the field-tested methamphetamine residue taken from the scale. A nurse drew blood from Farlee for laboratory testing and analysis.

Ultimately, a federal grand jury indicted Farlee for being a prohibited person (an unlawful user of or one addicted to a controlled substance) in possession of firearms.

3

He moved to suppress, from use at trial, the evidence seized from his pickup – including the paraphernalia confiscated from the locked safe in the truck – and his blood test results.  At a hearing held to address the motion, the Court heard testimony from five witnesses, received nine exhibits into evidence, and took judicial notice of a certain adjudicative fact.[2]

## DISCUSSION

### A. Stop

Farlee first claims that his traffic stop was an unreasonable and pretextual seizure.[3]  He denies doing anything wrong and insists that the stop was merely an attempt, on the part of Sergeant Marrufo, to secure evidence of an unrelated crime.[4]

A stop of a motor vehicle is a "seizure" of its occupants that must be conducted in accordance with the Fourth Amendment.[5]  A traffic stop is legal and comports with this Amendment if it is supported by probable cause or reasonable suspicion.[6]  Probable cause for such a stop exists "[a]s long as an officer objectively has a reasonable basis for

---

[2]*See* Mot. Hrg. Tr. 46-47 (that October 8, 2018 was a Monday); *see also* Fed. R. Evid. 201(b)(2) (a court may judicially notice a fact that "can be accurately and readily determined from sources whose accuracy cannot reasonable be questioned").

[3]*See* Dkt. No. 29 at 3-4.

[4]*See id*. at 4.

[5]*See Brendlin v. California*, 551 U.S. 249, 255-59 (2007).

[6]*See United States v. Gordon*, 741 F.3d 872, 876 (8th Cir. 2013).

believing that the driver has breached a traffic law."[7]   This is true even if the traffic violation is a minor one and the stop is simply "a pretext for other investigation."[8]  The less onerous standard of reasonable suspicion "exists when an 'officer is aware of particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed.'"[9]

Sergeant Marrufo testified that the Cheyenne River Sioux Tribe's Law and Order Code adopted the State  of South Dakota's motor vehicle laws.[10]  One such law requires that license plates "be conspicuously displayed" and "at all times, as far as is reasonably

---

[7]*Id.* (alteration in original) (*quoting United States v. Coney*, 456 F.3d 850, 856 (8th Cir. 2006)).

[8]*United States v. Payne*, 534 F.3d 948, 951 (8th Cir. 2008); *see also Wren v. United States*, 517 U.S. 806, 813 (1996) (explaining that Supreme Court precedent foreclose[s] any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officer[ ] involved" and that the "[s]ubjective intentions [of the officer] play no role in the ordinary, probable-cause Fourth Amendment analysis"); *United States v. Lopez*, 564 F.3d 1001, 1003-04 (8th Cir. 2009) (district court did not err in failing to take trooper's objective intentions into account, with respect to this stop of defendant's car, because they were irrelevant).

[9]*Gordon*, 741 F.3d at 876 (*quoting United States v. Hollins*, 685 F.3d 703, 706 (8th Cir. 2012)).

[10]*See* Mot. Hrg. Tr. 30.

possible, be kept clear and free of mud . . . so as to be clearly visible."[11]  A violation of the law is a Class 2 misdemeanor.[12]

It is uncontroverted that Sergeant Marrufo pulled Farlee over because of an obstructed rear license plate.[13]  The plate was covered in mud and unreadable – even at close range.[14]  The officer's dashcam[15] shows the mud-caked and indecipherable plate on the back of Farlee's pickup.

Farlee nevertheless disputes the license plate violation.  The Court found Sergeant Marrufo, and his explanation for the stop, to be credible.  The officer could not see, much less make out, the pickup's rear license plate.[16]  He thus had good reason to stop the truck.  But even if he had an ulterior motive for doing so, it did not serve to invalidate the stop because there was probable cause to believe that a crime – although a minor traffic offense – had just been committed.[17]

---

[11]*See* SDCL 32-5-98; *see also United States v. Peralez*, 526 F.3d 1115, 1116 (8th Cir. 2008) (recognizing the requirement under South Dakota law that license plates be "conspicuously" displayed).

[12]*See* §32-5-98.

[13]*See* Mot. Hrg. Tr.  9-10, 37-38.

[14]*See* Mot. Hrg. Ex. 1.

[15]*See id*.

[16]*See* Mot. Hrg. Tr. 10.

[17]*See Whren*, 517 U.S. at 812-13; *Peralez*, 526 F.3d at 1119; *see also United States v. Harris*, 617 F.3d 977, 978-79 (8th Cir. 2010) (truck's license plate not plainly visible because of tinted cover); *United States v. Rosian*, No. 1:19-cr-000157-LSC-JHE, 2019 WL

(continued. . .)

Regardless, as the text conveys and the United States Supreme Court has repeatedly affirmed, "the ultimate touchtone of the Fourth Amendment is 'reasonableness.'"[18]  "To be reasonable is not to be perfect, and the [ ] Amendment allows for some mistakes on the part of government officials giving them 'fair leeway for enforcing the law and the community's protection.'"[19]  The Supreme Court has recognized that searches and seizures based on mistake of fact can be reasonable.[20]  The Court has done so for mistakes of law as well, including ones made in the context of an investigatory stop of a vehicle for a traffic violation.[21]

The real question at this stage is not whether Sergeant Marrufo erred in interpreting the license plate law and believing that Farlee violated the law, but whether

---

3315640 at **5-6 (N.D. Ala. July 2, 2019), *R&R adopted*, 2019 WL 3305203 (N.D. Ala. July 23, 2019) (stop of vehicle with a mud- or dirt-covered license plate was proper); *United States v. Head*, No. 11-CR-0089 (RHK/LIB), 2011 WL 2912863 at **3-4 (D. Minn. May 10, 2011), *R&R adopted*, 2011 WL 2888156 (D. Minn. July 18, 2011) (stop based on license plate covered with snow – to the point where the criminal investigator could not determine whether there was even a plate on the car – in violation  of tribal code); *United States v. Trengali*, No. CR 05 000610 DLJ, 2006 WL 1050170 at  **5-6 (N.D. Cal. April 20, 2006) (stop justified because mud splatters on rear license plate obstructed the characters on the plate at a distance of three car lengths).

[18]*Riley v. California*, 573 U.S. 373, 381 (2014) (*quoting Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)).

[19]*Heien v. North Carolina*, 574 U.S. 54, 60-61 (2014) (*quoting Brinegar v. United States*, 333 U.S. 160, 176 (1949)).

[20]*See Heien*, 574 U.S. at 61.

[21]*See id*. at 61-67.

the officer so obviously erred that no objectively reasonable officer could have reached the same conclusion he did at the time of the stop. Or, put more succinctly, was it reasonable for the officer to suspect that Farlee's driving was illegal?

The Fourth Amendment leaves room for reasonable mistakes in determining whether a motorist has violated traffic laws – so long as the mistakes are objectively reasonable.[22] The Eighth Circuit has consistently upheld traffic stops where "an expert defense attorney, and even a federal judge, [ ] might conclude that the plain language of the [law] technically requires" a different result than that reached by the officer in the field.[23]

Hence, even if Sergeant Marrufo was wrong about whether the state license plate law was assimilated – into the tribal code – and infringed, his error of law was reasonable. He should not be expected to interpret code provisions with the subtly and

_____

[22]*See Heien*, 135 S.Ct. at 539; *United States v. Gadson*, 670 Fed. Appx. 907, 909 (8th Cir. 2016); *United States v. Martin*, 411 F.3d 998, 1002 (8th Cir. 2005); *United States v. Sanders*, 196 F.3d 910, 913 (8th Cir. 1999).

[23]*See Martin*, 411 F.3d at 1001; *see also United States v. Hastings*, 685 F.3d 724, 727-28 (8th Cir. 2012) (declining to determine whether motorist's conduct "in fact" violated state law "because it was objectively reasonable for [officer] to conclude that it did"), *cert. denied*, 568 U.S. 1134 (2013); *Harris*, 617 F.3d at 979 ("[w]hether probable cause exists for a traffic stop is judged by whether any mistake, whether or law or fact, is objectively reasonable"); *United States v. Washington*, 455 F.3d 824, 827 (8th Cir. 2006) ("if an officer makes a traffic stop based on a mistake of law, the legal determination of whether probable cause or reasonable suspicion existed for the stop is judged by whether the mistake of law was an objectively reasonable one"); *Sanders*, 196 F.3d at 913 (refusing to parse the words of the statute in deciding whether officer had probable cause to stop vehicle because he had an objectively reasonable basis for believing motorist breached a traffic law even if an actual violation existed).

expertise of a judge or lawyer, but only that he understand and apply the provisions to a level that is objectively reasonable.[24]  Given what he knew then – about the Tribe and State's motor vehicle  laws and the ownership of the pickup – and what he saw and testified to, any mistake of law the officer may have made was reasonable and enough to provide him with the probable cause necessary to stop Farlee's truck.[25]

In any event, if the muddied license plate was not – by itself – a sufficient basis for intercepting Farlee's pickup, the warrant for his arrest gave Sergeant Marrufo reasonable suspicion to pull the vehicle over.  An officer is authorized to stop a vehicle if there are reasonable grounds to believe the person is wanted for past criminal conduct.[26]  The officer thought that Farlee – who owned the truck – might be in it and confirmed that Farlee had an outstanding arrest warrant before stopping him.  Because Sergeant Marrufo had reasonable suspicion to believe that Farlee was wanted for

---

[24]*See Sanders*, 196 F.3d at 913.

[25]*See Heien*, 574 U.S. at 60-67; *Rosian*, 2019 WL 3315640 at **5-6; *Head*, 2011 WL 2912863 at **3-4; *Trengali*, 2006 WL 1050170 at **5-6.

[26]*See United States v. Cortez*, 449 U.S. 411, 417, n.2 (1981); *United States v. Brooks*, 290 Fed. Appx. 955, 958 (8th Cir. 2008).

criminal activity, the officer was justified in making the stop.[27]  That the warrant was a restricted one[28] and for a vehicle equipment offense,[29] does not change the result.[30]

## B. Vehicle Search

Farlee next claims that the search of his truck, incident-to-arrest but without a warrant, contravened the Fourth Amendment.[31]  He contends that the police were prohibited from searching the pickup and locked safe in it under *Arizona v. Gant*[32] and because no probable cause existed for the search.[33]  According to Farlee, it was only

---

[27]*See Wilson v. Lamp*, 901 F.3d 981, 987 (8th Cir. 2018); *United States v. Patrick*, 776 F.3d 951, 955 (8th Cir. 2015); *Head*, 2011 WL 2912863 at *4, n.5.

[28]*See* Mot. Hrg. Tr. 17, 66, 89, 91 (explaining that Farlee could only be arrested on the warrant between the hours of 8:00 a.m. and 5:00 p.m., Monday through Friday).

[29]*See* Mot. Hrg. Tr. 64-65, 68, 90 (testimony that Farlee's arrest warrant was for a child restraint violation); *see also* Mot. Hrg. Ex. A (indicating that Farlee was cited for such a violation in 2016).

[30]*See* Mot. Hrg. Tr. 66-67, 77-78, 91-92 (authorizing the stop and arrest of the person wanted based solely on, but only during the period expressed in, the warrant); *United States v. Barlow*, 308 F.3d 895, 897-98, 901 (8th Cir. 2002) (Bye, J., writing for the majority and Lay, J., concurring specially) (outstanding misdemeanor warrant provided a valid and reasonable basis for the vehicle stop); *but see*  Mot. Hrg. Tr. 17-18 (opining that some reason, other than the warrant, was needed to stop Farlee).

[31]*See* Dkt. No. 29 at 3-5.

[32]556 U.S. 332 (2009) (holding that police may search the passenger compartment of a vehicle incident-to-arrest only if it is reasonable to believe that the arrestee might access the vehicle at the time of the search or that the vehicle contains evidence of the offense of arrest).

[33]*See* Dkt. No. 29 at 4.

after officers illegally opened the safe and surveyed its contents that they had probable cause to arrest him for being a prohibited person in possession of firearms.[34]

A warrantless search of a vehicle for contraband is allowed under the Fourth Amendment if an officer has probable cause for the search[35] or the officer has obtained voluntary consent and the search is limited to the scope of the consent.[36]  An officer's observations, made during the consensual search of a vehicle, may provide the officer with probable cause to expand the breadth of the search under the automobile exception to the warrant requirement.[37]

"Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place."[38]  This "practical and common-sensical standard"

---

[34]*See id.* at 5.

[35]*See Collins v. Virginia*, 138 S.Ct. 1663, 1670 (2018); *United States v. Ross*, 456 U.S. 798, 825 (1982).

[36]*See Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *United States v. Guevara*, 731 F.3d 824, 829 (8th Cir. 2013).

[37]*See United States v. Murillo-Salgado*, 854 F.3d 407, 417 (8th Cir.), *cert. denied*, 138 S.Ct. 245 (2017); *see also Guevara*, 731 F.3d at 831 (once troopers discovered the hidden engine compartment during a consensual search, they had probable cause to search the vehicle for drugs in a destructive way), *cert. denied*, 571 U.S. 1225 (2014); *United States v. Alverez*, 235 F.3d 1086, 1089 (8th Cir. 2000) (officers' observations of vehicle during consensual search gave them probable cause to believe that there was contraband in the spare tire, thus allowing them to expand the scope of the search under the automobile exception and to remove the spare tire from the trunk and examine it more closely).

[38]*United States v. Wells*, 347 F.3d 280, 287 (8th Cir. 2003) (citations omitted), *cert.*
(continued. . .)

is based on "the totality of the circumstances" and requires only "the kind of fair probability beyond which reasonable and prudent people, not legal technicians, act."[39] "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search,"[40] including any closed containers in the vehicle, without regard to ownership of them.[41] And in the probable cause determination, an officer "may draw inferences based on his own experience."[42]

Farlee initially consented to a search of the pickup.[43]  After Sergeant Marrufo spotted a rifle on the floor inside, he deployed his certified drug detection dog[44] around the truck.  The officer did so because of "intel" he and his drug task force colleagues had that Farlee and In The Woods were involved in the sale and use of controlled

---

denied, 541 U.S. 1081 (2004); see also Florida v. Harris, 568 U.S. 237, 243 (2013) ("a police officer has probable cause to conduct a search when the facts available to him would warrant a person of reasonable caution in the belief that contraband or evidence of a crime is present" (internal quotation, alterations, and citation omitted)).

[39]Harris, 568 U.S. at 244 (internal quotations, alterations, and citations omitted).

[40]Ross, 456 U.S. at 825.

[41]See Wyoming v. Houghton, 526 U.S. 295, 301-02 (1999).

[42]Ornelas v. United States, 517 U.S. 690, 700 (1996).

[43]See Mot. Hrg. Tr. 11, 20, 30-31, 49.

[44]See Mot. Hrg. Ex. 3; see also Mot. Hrg. Tr. 7-8, 11, 32-34 (discussing K-9 Iwan's credentials and reliability).

substances.[45]  The dog reliably[46] alerted to the presence of a narcotic odor coming from within the vehicle.  Sergeant Marrufo and Officer Norman then searched the vehicle and in it found three rifles, a pistol, and a locked safe.  Using a key from the key ring hanging from the ignition, Officer Norman opened the safe and came across a digital scale, two glass pipes, and clear plastic baggies – paraphernalia common to the drug trade.[47]  The white powdery residue on the scale field-tested positive for methamphetamine.

The canine's alert, when combined with the totality of the circumstances present – including the training and experience of the three officers in drug investigations[48] – provided the requisite "fair probability" that the truck held "contraband or evidence of a crime."[49]  Under the automobile exception, the officers were therefore permitted to search "every part of the vehicle and its contents" that could conceal gun and drug-related contraband, including the safe.[50]

---

[45]*See* Mot. Hrg. Tr. 34-35, 37, 68-69.

[46]*See United States v. Trejo*, No. 3:14-CR-30138-RAL, 2015 WL 5684801 at **2-3 (D.S.D. Sept. 24, 2015)

[47]*See* Mot. Hrg. Tr. at 52-53, 76.

[48]*See id.* at 7-8, 41-42, 48, 72 (setting forth the searching officers' training and experience in drug interdictions).

[49]*Harris*, 568 U.S. at 243.

[50]*See Houghton*, 526 U.S. at 302; *California v. Acevedo*, 500 U.S. 565, 580 (1991); *Ross*, 456 U.S. at 825; *United States v. Perez-Trevino*, 891 F.3d 359, 367 (8th Cir.), *cert. denied*, 139
(continued. . .)

## C. Tainted Fruit

Farlee lastly claims that the blood officers obtained from him was the tainted fruit of a poisonous tree and should be suppressed under the Exclusionary Rule.[51]  He asserts that the tribal search warrant executed for his blood should be negated because it was based on an illegal search of his pickup and the safe discovered in it.[52]

Farlee's claim is contingent upon there being encroachments of the Fourth Amendment incident to the stop and the search of the truck and safe.  But because the officers did not skirt this Amendment or overstep their authority, there is no "poisonous tree" for any "tainted fruit" to grow or fall from.[53]  It follows then that:

---

S.Ct. 608 (2018); *Murillo-Salgado*, 854 F.3d at 418; *United States v. Holleman*, 743 F.3d 1152, 1156-59 (8th Cir.), *cert. denied*, 573 U.S. 953 (2014); *see also United States v. Salgado*, 761 F.3d 861, 867 (8th Cir. 2014) (evidence of drug dog's training and certification was sufficient to establish the dog's reliability and thereby demonstrate probable cause for the vehicle search); *United States v. Bloomfield*, 40 F.3d 910, 919 (8th Cir. 1994) (a dog's "alert" to drugs in a vehicle provides probable cause to search the vehicle without a warrant under the automobile exception to the warrant requirement), *cert. denied*, 514 U.S. 1113 (1995); *United States v. Caves*, 890 F.2d 87, 90 (8th Cir. 1989) (police may search throughout the passenger compartment and trunk of an automobile and examine the contents of all containers, packages, and compartments located in the vehicle if there is probable cause to believe that the object of the search will be found there).

[51]*See* Dkt. 29 at 3, 5-6.

[52]*See id.* at 5.

[53]*See United States v. Bradshaw*, No. 3:17-CR-300101(02)-RAL, 2018 WL 4347924 at *8 (D.S.D. Sept. 6, 2018), *R&R adopted*, 2018 WL 4344999 (D.S.D. Sept. 11, 2018); *United States v. LaBatte*, CR. 12-30158-01-RAL, 2013 WL 2286340 at *8 (D.S.D. May 23, 2013); *United States v. Medearis*, 775 F.Supp.2d 1110, 1128-29 (D.S.D. 2011); *see also United States v. Brown*, CR. 12-30115-RAL, 2013 WL 943619 at *9 (March 11, 2013) (defendant's "fruit of the poisonous tree" argument fails because the search was supported by probable

(continued. . .)

a.  Sergeant Reede's affidavit, as written, provided probable cause for the issuance of a search warrant for Farlee's blood;

b.  The warrant was valid (or could objectively be relied on as such);[54] and

c.  The blood evidence, as well as the test results from it, may be used against Farlee at trial, whether he testifies or not.

## CONCLUSION

Sergeant Maruffo had reasonable suspicion (based on the outstanding arrest warrant) and probable cause (because of a mud-obstructed license plate) to stop Farlee. That rendered the stop reasonable under the Fourth Amendment – even if the officer had some additional law enforcement objective in mind.

Officers had Farlee's consent and probable cause to believe his pickup had contraband in it.  They were within their authority to search the entire passenger compartment of the truck as well as the locked safe because the object of their search – gun and drug associated contraband – could easily be in any of these places.

And there is no reason to keep out the blood evidence, seized under the authority of a tribal search warrant, as "tainted fruit" under the Exclusionary Rule.  The law, as applied to Farlee's case, foils his ability to suppress this evidence, and the test

---

cause).

[54]*See United States v. Farlee*, 757 F.3d 810, 818-20 (8th Cir.), *cert. denied*, 135 S.Ct. 504 (2014); *United States v. Hudspeth*, 525 F.3d 667, 676 (8th Cir. 2008); *see also United States v. Westphal*, No. 3:18-CR-30099-RAL, 2019 WL 1789563 at **2-3 (D.S.D. April 24, 2019) (applying *Leon*'s good-faith exception to a warrant for, among other things, a blood or urine specimen).

results derived from it, the Government has – and stands ready to use against him at trial.

## RECOMMENDATION

Accordingly, based on the authorities and legal analysis set forth in this report, and the record now before the Court, it is hereby

RECOMMENDED that Farlee's Motion to Suppress Evidence[55] be denied.

## NOTICE

The parties have 14 calendar days after service of this report and recommendation to file their objections to the same.[56] Unless an extension of time for cause is later obtained,[57] failure to file timely objections will result in the waiver of the right to appeal questions of fact.[58]   Objections must "identify[] those issues on which further review is desired[.]"[59]

---

[55]*See* Dkt. No. 28.

[56]*See* 28 U.S.C. §636(b)(1); Fed. R. Crim. P. 59(b).

[57]*See Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990); *Nash v. Black*, 781 F.2d 665, 667 & n.3 (8th Cir. 1986) (*citing Thomas v. Arn*, 474 U.S. 140, 155 (1985)).

[58]*See Thompson*, 897 F.2d at 357; *Nash*, 781 at 667.

[59]*Arn*, 474 U.S. at 155.

DATED this 5th day of November, 2019, at Pierre, South Dakota.

**BY THE COURT:**

**MARK A. MORENO**
**UNITED STATES MAGISTRATE JUDGE**