UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| UNITED STATES OF AMERICA, | 3:19-CR-30018-RAL |
|---|---|
| Plaintiff, | |
| vs. | OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION AND DENYING MOTION TO SUPPRESS |
| JASON FARLEE, | |
| Defendant. | |

Carrying contraband in one's car is risky business given that police may stop a vehicle for any number of reasons. Defendant Jason Farlee learned this the hard way when Police Sergeant Ramon Marrufo pulled him over on October 8, 2018, and discovered guns and drug paraphernalia in Farlee's truck. Farlee argues that the evidence taken from him and his vehicle must be suppressed because Sergeant Marrufo lacked probable cause or a reasonable suspicion to stop him and the search of a safe found in his truck was unconstitutional. This Court denies Farlee's motion because both the traffic stop and the search of the safe complied with the Fourth Amendment.

I.  **Facts**

Around noon on the day of the stop, Sergeant Marrufo, a police officer with the Cheyenne River Sioux Tribe Law Enforcement Services (CRSTLES), was on patrol in Eagle Butte, South Dakota. T. 8–9. He spotted a dark-purple pickup truck which he knew belonged to Farlee driving northbound on Main Street. T. 9–10, 15, 18. He requested a warrant check on Farlee and learned that Farlee had an active tribal arrest warrant. T. 9, 15–16, 19.

1

Sergeant Marrufo caught up with the truck and saw that its rear license plate was obscured by mud. T. 9–10, 16; Ex. 1. He stopped the truck and asked Farlee, the driver, to have a seat in his patrol car. T. 10, Ex. 1; Ex. B. As they walked to the car, Farlee acknowledged that there were guns in the truck and consented to Sergeant Marrufo's request to search it. T. 11, 20–21, 30–31 Ex. B.

With Farlee in the patrol car, Sergeant Marrufo returned to the truck and spoke with the front seat passenger, Brittany In The Woods. T. 10, Ex. 1; Ex. B. He noticed a rifle laying near In The Woods, so he had her exit the truck. T. 40; Ex. B; Ex. 1.

Meanwhile, CRSTLES Sergeant Jeremy Reede and Officer Cody Norman arrived at the scene. Ex. 1; T. 36, 48–49, 72. Sergeant Reede wrote Farlee a citation for having an obscured license plate while Sergeant Marrufo ran his drug dog, Iwan, around the exterior of Farlee's truck. Ex. 1; Ex. B; T. 11, 21–22, 49. Iwan alerted to the odor of a narcotic coming from the driver's side door by changing his breathing and elevating his ears. T. 11, 21; Ex. 1.

Based on the alert, the officers searched Farlee's truck and found three rifles, a pistol, and a locked safe. T. 12, 28–29, 51, 73–75; Ex. 1. Officer Norman opened the safe with one of Farlee's keys. T. 74, 79. Inside he found two glass pipes, clear plastic baggies, and a small digital scale. T. 12, 29, 31, 74; Ex. B. The scale's table had a white residue on it that field tested positive for methamphetamine. T. 51, 53; Ex. B.

Farlee was arrested for the active warrant and the unlawful possession of a controlled substance, drug paraphernalia, and weapons. T. 35–36; Ex. B. Later that day, Sergeant Reede obtained a tribal search warrant for Farlee's blood based on the evidence seized from his truck. T. 52, 55–56; Ex. C.

A federal grand jury eventually indicted Farlee for possessing firearms while being an unlawful user of a controlled substance. Doc. 26. Magistrate Judge Mark A. Moreno held a hearing on Farlee's motion to suppress, during which he heard testimony from Sergeants Marrufo and Reede, Officer Norman, and Beth Ducheneaux, a criminal court clerk for the Cheyenne River Sioux Tribe. He also received several exhibits into evidence, including a recording of the traffic stop from Sergeant Marrufo's dashcam. Judge Moreno recommended denying Farlee's motion to suppress, concluding that reasonable suspicion and probable cause supported the traffic stop, that the search of the truck and safe was lawful, and that the blood drawn from Farlee need not be suppressed as fruit of the poisonous tree. Doc. 41. Farlee has now objected to the report and recommendation. Doc. 50.

This Court reviews a report and recommendation pursuant to the statutory standards found in 28 U.S.C. § 636(b)(1), which provides in relevant part that "[a] judge of the [district] court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." However, "[i]n the absence of an objection, the district court is not required 'to give any more consideration to the magistrate's report than the court considers appropriate.'" United States v. Murillo-Figueroa, 862 F. Supp. 2d 863, 866 (N.D. Iowa 2012) (quoting Thomas v. Arn, 474 U.S. 140, 150 (1985)). Having conducted a de novo review of those portions of the report and recommendation to which Farlee objects, this Court adopts the report and recommendation.

II. **Traffic Stop**

A traffic stop is a "seizure" under the Fourth Amendment and must be supported by probable cause or reasonable suspicion. United States v. Gordon, 741 F.3d 872, 876 (8th Cir. 2013). Probable cause for a traffic stop exists "[a]s long as an officer objectively has a reasonable

basis for believing that the driver has breached a traffic law." Id. (cleaned up) (quoting United States v. Coney, 456 F.3d 850, 856 (8th Cir. 2006)). This is true even when the traffic violation is minor, and the stop is simply "a pretext for other investigation." United States v. Payne, 534 F.3d 948, 951 (8th Cir. 2008); see also Whren v. United States, 517 U.S. 806, 813 (1996) (explaining that Supreme Court precedent "foreclose[d] any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved"). The less-rigorous standard of reasonable suspicion "exists when an 'officer is aware of particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed.'" Gordon, 741 F.3d at 876 (internal marks omitted) (quoting United States v. Hollins, 685 F.3d 703, 706 (8th Cir. 2012)). The Fourth Amendment requires that police officers be reasonable, not perfect. Heien v. North Carolina, 574 U.S. 54, 60–61 (2014). Thus, grounds for a traffic stop may rest on an officer's mistake of fact or law, provided that the mistake is objectively reasonable. Id. at 60–67; Hollins, 685 F.3d at 706.

Sergeant Marrufo testified that he stopped Farlee because of the obstructed license plate and the arrest warrant. T. 37. Judge Moreno concluded that the obstructed license plate provided probable cause to believe that Farlee had violated a traffic law and that the arrest warrant gave Sergeant Marrufo reasonable suspicion for the stop. This Court agrees with Judge Moreno that both the obstructed license plate and the arrest warrant provided a lawful basis for the stop.

### A. License Plate

Sergeant Marrufo testified that the Cheyenne River Sioux Tribe adopted the state of South Dakota's motor vehicle laws. T. 30. Sergeant Reede testified similarly, saying that the Tribe has adopted some of South Dakota's traffic laws and that, based on his training and experience, having

4

an obstructed license plate violates the Tribe's Traffic Code.[1] T. 49–50. The law in question requires that license plates be "conspicuously displayed" and "at all times, as far as is reasonably possible, be kept clear and free of mud, ice, or snow so as to be clearly visible." SDCL § 32-5-98. This Court need not decide whether Farlee actually violated § 32-5-98 because an officer's mistake of law can provide probable cause or reasonable suspicion for a traffic stop so long as the mistake is objectively reasonable. Heien, 574 U.S. at 60–67; United States v. Washington, 455 F.3d 824, 827 (8th Cir. 2006). The question here is whether it was objectively reasonable for Sergeant Marrufo to conclude that Farlee failed, "as far as is reasonably possible," to keep his license plate "clear and free of mud, ice, or snow so as to be clearly visible."

Farlee rightly does not object to Judge Moreno's finding that his license plate was covered in mud and unreadable; the video of the stop shows that the mud made Farlee's license plate indecipherable even at close range, and Judge Moreno found Sergeant Marrufo's testimony on this point credible. Ex. 1; T. 10; Doc. 41 at 6. Nor does Farlee argue that his license plate was still "clearly visible" even though it was illegible.[2] Instead, Farlee argues that the stop was unreasonable given the weather on October 8, 2018, and the type of roads surrounding Eagle Butte. It was raining on October 8, 2018. Ex. 1; T. 25, 65. Sergeant Marrufo testified that "quite a few" individuals around Eagle Butte live on dirt roads,[3] that he would expect the dirt roads to be muddy on a rainy day, and that he would see "a lot" (but less than a majority) of muddy vehicles in Eagle

---

[1] Farlee does not dispute the officers' testimony that the Tribe adopted South Dakota's motor vehicle laws. Doc. 50. Nor does he object to Judge Moreno's conclusion that any mistake about whether the Tribe adopted South Dakota's license plate law was reasonable. Doc. 41 at 8–9; Doc. 50.
[2] The video of the traffic stop shows that Farlee's truck was so dirty that it was difficult to see whether he even had a license plate at all. Ex. 1.
[3] Sergeant Reede testified that Farlee lives on a dirt road about 30 miles outside of Eagle Butte. T. 65.

5

Butte on rainy days. T. 25–26. Farlee argues that "[w]hile it may be reasonable to stop a vehicle for an obscured license plate traveling on the interstate, or driving in Sioux Falls on a rainy day, it is unreasonable for an officer to have the authority to stop all vehicles with muddy license plates on a rainy day in West River South Dakota." Doc. 50 at 4.

To be sure, police officers in South Dakota could not reasonably interpret § 32-5-98 as allowing them to stop a car with a muddy license plate regardless of the circumstances. After all, the roads and weather in South Dakota could create situations where it was not "reasonably possible" for drivers to keep their license plates clear. But Farley was not driving on a muddy rural dirt road when he was stopped. Ex. 1; T. 25. Instead, he was on a paved street in downtown Eagle Butte. Ex. 1; T. 25. Moreover, Farlee's license plate wasn't just a little dirty, but rather was so caked in mud that it was difficult to tell whether he had a license plate at all. Ex. 1; T. 10. And Sergeant Marrufo did not, as Farlee suggests, testify that mud obscured the license plates on "a lot" of vehicles in Eagle Butte on October 8, 2018. In fact, the video of the stop shows several other cars with license plates that are not dirty all. Ex. 1. Beyond that, Farlee has not cited—and this Court has not found—any case from the Supreme Court of South Dakota or the Cheyenne River Sioux Tribal Court interpreting § 32-5-98 in a way that conflicts with Sergeant Marruffo's belief that Farlee violated the statute. See Heien, 574 U.S at 68 (noting that a state's appellate courts had never construed a state statute at issue when deciding that the officer's mistaken interpretation of the statute was reasonable). Under these circumstances, a reasonable officer could conclude that Farlee's muddy license plate violated the Cheyenne River Sioux Tribe's Traffic Code. Because any mistake of law Sergeant Marrufo made was reasonable, there was reasonable suspicion justifying the stop of Farlee's truck.

**B. Bench Warrant**

Farlee does not specifically object to Judge Moreno's conclusion that the arrest warrant gave Sergeant Marrufo reasonable suspicion to stop Farlee's truck. However, Farlee does discuss Sergeant Marrufo's testimony that he could not make a traffic stop based solely on the warrant. Doc. 50. To the extent this discussion is an objection, it is overruled.

The witnesses at the suppression hearing testified that the warrant was for failing to pay a $50 fine for a child restraint violation. Ex. A; T. 17–18, 64–65, 90–91. They described the warrant as being an "8 to 5 warrant," meaning that Farlee could only be arrested on the warrant between the hours of 8:00 a.m. and 5:00 p.m., Monday through Friday. T. 17, 66, 89, 91. Judge Moreno took judicial notice that October 8, 2018, was a Monday. T. 46–47. Although Sergeant Marrufo agreed on cross-examination that he needed some reason other than the warrant to stop Farlee, Sergeant Reede, Officer Norman, and Ducheneaux (the tribal clerk of court) all testified that the police can stop and arrest someone based solely on an 8 to 5 warrant so long as the stop occurs within the date and time restrictions. T. 66–67, 77–78, 91–92. Moreover, Farlee has not cited any authority supporting Sergeant Marrufo's understanding, and nothing in the Cheyenne River Sioux Tribe's Rules of Criminal Procedure suggests that Sergeant Marrufo could not stop Farlee based on the warrant. See Cheyenne River Sioux Tribe Law and Order Code Title II, Rules 6 & 32. In short, Sergeant Marrufo's mistaken belief about the warrant did not render it an invalid basis for stopping Farlee. See Florida v. Royer, 460 U.S. 491, 507 (1983) (noting that an officer's belief that probable cause was lacking "would not foreclose the State from justifying [the suspect's] custody by proving probable cause"); United States v. Gagnon, 373 F.3d 230, 239 (2d Cir. 2004) ("[A] law enforcement officer's mistaken belief that probable cause did not exist at the time is irrelevant to a court's later determination of whether probable cause existed at the time.").

This Court agrees with Judge Moreno that the arrest warrant gave Sergeant Marrufo reasonable suspicion to stop Farlee's truck. Sergeant Marrufo knew the dark-purple pickup truck he saw on October 8, 2018, belonged to Farlee, and he knew that Farlee had an active arrest warrant. T. 9, 15, 18, 36. This was enough to justify the stop. See United States v. Pyles, 904 F.3d 422, 424–25 (6th Cir. 2018) ("Once an officer discovers that a car's owner has an outstanding arrest warrant, he needs only reasonable suspicion that the owner is in the vehicle. It is fair to infer that the registered owner of a car is in the car absent information that defeats the inference." (internal citation omitted)); United States v. Chartier, 772 F.3d 539, 543 (8th Cir. 2014) (concluding that the officer had reasonable suspicion for a traffic stop where he could not identify who was driving the car but knew that the car's owner did not have a valid driver's license). And as Judge Moreno found, this conclusion holds true even though Farlee's warrant was for a vehicle equipment offense. United States v. Barlow, 308 F.3d 895, 897–98, 901, 902–03 (8th Cir. 2002) (Bye, J., writing for the majority; Lay, J., concurring specially; Gibson, J., dissenting) (agreeing that an outstanding misdemeanor warrant was a valid basis for stopping a car).

**III.   Search of the Safe**

Farlee argues that the search of the safe was illegal because any probable cause created by Iwan's alert to the truck did not extend to the safe. This argument fails for the reasons explained by Judge Moreno. Indeed, an officer with probable cause to search a vehicle may search any item within that vehicle that is capable of containing the object of the search, regardless of whether the item belongs to the driver, passenger, or someone else. Wyoming v. Houghton, 526 U.S. 295, 307 (1999). Here, Iwan alerted to Farlee's truck and the officers had information from working on the drug task force that Farlee was a methamphetamine user. T. 11, 21, 34–35, 37, 68–69. Together, these facts gave the officers probable cause to believe that the truck contained illegal drugs. See

United States v. Holleman, 743 F.3d 1152, 1156–58 (8th Cir. 2014) (concluding that drug dog's two alerts to vehicle, when considered with other suspicious circumstances, provided probable cause to search vehicle); United States v. Tuton, 893 F.3d 562, 570 (8th Cir. 2018) ("Assuming that the dog is reliable, a dog sniff resulting in an alert on a container, car, or other item, standing alone, gives an officer probable cause to believe that there are drugs present." (citation omitted)); United States v. Winters, 600 F.3d 963, 967 (8th Cir. 2010) ("[A]n alert or indication by a properly trained and reliable drug dog provides probable cause for . . . the search of a vehicle.").[4] This probable cause extended to the safe because it could have concealed drugs, the object of the officers' search.

### III. Blood Draw

Farlee argued unsuccessfully to Judge Moreno that the blood draw must be suppressed as fruit of the poisonous tree because the traffic stop and search of the safe were illegal. See Wong Sun v. United States, 371 U.S. 471 (1963). Farlee now objects to Judge Moreno's recommendation to the contrary. Because the stop and search of the safe were legal, Farlee's objection is overruled.

### IV. Conclusion

For reasons explained above, it is hereby

ORDERED that Farlee's motion to suppress, Doc. 28, is denied. If is further

ORDERED that the Report and Recommendation, Doc. 41, is adopted.

DATED this 13th day of December, 2019.

---

[4] The government offered evidence of Iwan's reliability, T. 7–8, 32–33; Ex. 3, and Farlee does not object to Judge Moreno's conclusion that Iwan "reliably" alerted to his truck, Doc. 41 at 13. Nor does Farlee argue that probable cause was lacking because Iwan "alerted"—as opposed to "indicated"—to his truck. See Tuton, 893 F.3d at 572–73 (Kelly, J., dissenting) (stating that the Eighth Circuit's decision in Holleman "does not establish that an alert, in the absence of a final indication, will always satisfy the probable cause requirement").

BY THE COURT:

_____
ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE